UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 13-834(DSD/FLN)

Kenneth Lindsay and Jesse Owens,
individually and on behalf of
other similarly situated individuals,

        Plaintiffs,

v.                                                    **ORDER**

Clear Wireless LLC and Workforce
Logic LLC, d/b/a Workforce Logic,
a Zero Chaos Company, and APA
Workforce Solutions, LLC d/b/a
Zero Chaos,

        Defendants.


        Eric D. Satre, Esq., Jarvis C. Jones, Esq. and Jones,
        Satre & Weimer, 7900 Xerxes Avenue South, Suite 820,
        Bloomington, MN 55431, counsel for plaintiffs.

        Mary L. Knoblauch, Esq. and Anthony, Ostlund, Baer &
        Louwagie, P.A., 90 South Seventh Street, Suite 3600,
        Minneapolis, MN 55402 and Joyce Ackerbaum Cox, Esq. and
        Baker & Hostetler LLP, 200 South Orange Avenue, Suite
        2300 Sun Trust Center, Orlando, FL 32801, counsel for
        defendants.


        This matter is before the court upon the motion for summary

judgment by defendant Workforce Logic, LLC (Workforce). Based on a

review of the file, record and proceedings herein, and for the

following reasons, the court denies the motion.


## BACKGROUND

        This wage-and-hour dispute arises out of the employment

relationship between named plaintiffs Kenneth Lindsay and Jesse

Owens (collectively, plaintiffs) and defendants Clear Wireless LLC (Clear Wireless) and Workforce (collectively, defendants).[1]

Plaintiffs allege that defendants failed to comply with the overtime wage provisions of the Fair Labor Standards Act (FLSA). Plaintiffs were hired through Workforce, a staffing company, to work for Clear Wireless selling 4G broadband Internet products.[2] See Am. Compl. ¶ 26. Workforce and Clear Wireless operated under a Professional Services Agreement, providing that Workforce would "onboard" individuals that Clear Wireless had recruited and interviewed. See Cox Decl., Ex. A, ECF No. 68; Stephens Decl., ECF No. 140, at ¶ 5. "Onboarding" involved having such individuals complete initial hire paperwork pursuant to a Temporary Employment Agreement (Employment Agreement) via telephone and e-mail. See Stephens Decl., ECF No. 140, at ¶ 5. Plaintiffs allege that, during their employment, they were required to perform tasks off-

_____

[1] On May 19, 2014, the magistrate judge granted plaintiffs' motion to amend the complaint to include Workforce Solutions, doing business as Zero Chaos, as a defendant. See ECF No. 223. On July 14, 2014, the magistrate judge granted plaintiffs' motion to file a second amended complaint adding defendants Gary D. Nelson Associates, Inc. (GDNA), ABE Services, LLC, doing business as Workforce Logic (ABE) and Clearwireless Corporation (Clear). See ECF No. 281. To date, the final version of the second amended complaint has not been filed.

[2] Pursuant to an equity purchase agreement executed on January 5, 2012, APC Workforce Solutions, doing business as ZeroChaos, became the owner of Workforce, which had acquired the Clear Wireless account from GDNA pursuant to a separate corporate asset transfer agreement executed the previous day. See Goin Decl., ECF No. 141, at ¶¶ 2-8.

the-clock, such that they were not paid overtime wages to which they were entitled.  See Am. Compl. ¶¶ 61-68.  Specifically, plaintiffs allege that defendants maintained a time-clock system that did not allow the entry of overtime hours and required employees to work such hours.

On April 9, 2013, plaintiffs filed suit individually and on behalf of similarly-situated individuals, alleging that defendants failed to pay overtime compensation in violation of the FLSA.[3] Workforce moves for summary judgment.

## DISCUSSION

## I.   Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

---

[3] Plaintiffs originally asserted an FLSA minimum wage claim. On May 29, 2014, the court adopted the magistrate judge's report and recommendation and dismissed the minimum wage claim.  See ECF No. 234.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324.  A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Celotex, 477 U.S. at 322-23.

## II.  Fair Labor Standards Act

"An employer can be held liable under the FLSA for unauthorized, unpaid overtime when the employer had actual or constructive notice that employees were working off-the-clock." Brennan v. Qwest Commc'ns Int'l, Inc., No. 07-2024, 2009 WL 1586721, at *4 (D. Minn. June 4, 2009) (citations omitted). Workforce argues that summary judgment is warranted because it (1) was not an "employer" under the FLSA and (2) had no knowledge of any overtime work.

4

A.     **Employment Relationship**

Workforce first argues that it is not an employer of plaintiffs within the meaning of the FLSA.[4]   The FLSA provides, subject to certain exceptions, that:

> no employer shall employ any of his employees
> who in any workweek is engaged in commerce or
> in the production of goods for commerce, ...
> for a workweek longer than forty hours unless
> such employee receives compensation for his
> employment in excess of the hours above
> specified at a rate not less than one and one-
> half times the regular rate at which he is
> employed.

29 U.S.C. § 207(a)(1).  The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."   Id. § 203(d).   Further, a joint employment relationship may exist when "the employee performs work which simultaneously benefits two or more employers," including when "one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee."

---

[4] Workforce also argues that it is entitled to summary judgment because Lindsay was never employed by Workforce. Specifically, Workforce argues that Lindsay's employment ended in late December 2011, and Workforce commenced ownership of the Clear Wireless Account on January 5, 2012.   See Goin Decl., ECF No. 141, ¶ 8.   The court concludes, however, that a genuine issue of material fact remains concerning the corporate structures of the entities and the timeline of their operation.   See id. ¶ 4 (purporting to attest without personal knowledge to the timeline of relevant corporate structures); see also Jones Aff., Ex. 10, ECF No. 161 (January 12, 2012, email from "Workforce Logic" to Lindsay addressed to "WorkforceLogic Employee").   But see Lindsay Dep. 391:2-5.   Such lack of clarity in the record renders summary judgment premature on the basis of Lindsay's timeline of employment or the relevant corporate structures.

29 C.F.R. § 791.2(b); see id. § 791.2(a) (describing a joint employer as one whose employment of an employee "is not completely disassociated from employment by the other employer(s)").

To determine whether an employment relationship exists, the court looks to the "economic reality of the arrangement." Blair v. Wills, 420 F.3d 823, 829 (8th Cir. 2005) (citation omitted). In determining the economic reality, the court considers

> (1) the degree of control over the manner in which the work is performed; (2) the worker's opportunity for profit or loss depending on his managerial skill; (3) the worker's investment in equipment or materials, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree [of] permanence of the working relationship; and (6) whether the service rendered is an integral part of the employer's business.

Catani v. Chiodi, No. 00-1559, 2001 WL 920025, at *3 (D. Minn. Aug. 13, 2001) (citations omitted). In evaluating whether a joint employment relationship exists, however, the court engages in a more limited analysis of the economic realities. Specifically, the court "tend[s] to narrow the inquiry and ask[s] whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." Id. at *6 (citation omitted). "[I]t is the totality of the circumstances, and not any one factor, which determines whether a worker is the employee of a particular

alleged employer." Id. at *3 (citation and internal quotation marks omitted).

Here, both Clear Wireless and Workforce were involved in the hiring and firing of employees under the Employment Agreement. See, e.g., Jones Aff., Ex. 5, ECF No. 43, at PL3019 ("[Workforce] hereby employs Employee .... Employee's employment and assignment to work at [Clear Wireless] is at-will and may be terminated at any time with or without cause and with or without prior notice by Employee, [Workforce], or [Clear Wireless]."). Further, the Employment Agreement contains provisions detailing various terms and conditions of employment, including benefits, expenses, confidentiality, provision of materials related to employees' workspaces and compliance with both Workforce and Clear Wireless policies. See, e.g., id. at PL3019-30. Such contractual provisions are no doubt relevant to employees' conditions of employment.

Workforce argues that Clear Wireless determined each individual's position, assigned work locations, fixed hourly rates of pay and disseminated weekly schedules, and that Workforce had no involvement in determining the rate or method of payment. The Employment Agreement, however, provides for a direct deposit arrangement between employees and Workforce and includes a schedule of commissions that applied "[i]n addition to [employees'] hourly rate." Jones Aff., Ex. 5, ECF No. 43, at PL3024, 3032. Further,

7

pursuant to the Employment Agreement, employees "accept[] employment by [Workforce] at a wage of $10.00 per hour," and the attached commission schedule provides that "[c]ommissions will be paid out monthly, based upon approval by [Workforce's] client [Clear Wireless]." See id. at PL3019, 3025.  Thus, the roles of Workforce and Clear Wireless with regard to rates and method of payment appear interrelated, at least at this stage of the proceedings.  Finally, it is undisputed that Workforce provided employees with group health and dental insurance coverage, as well as optional life insurance coverage and necessarily maintained records as part of such role.  See Linsday Decl., ECF No. 45, at ¶ 12; Jones Aff., Ex. 5, ECF No. 43, at PL 3031.  As a result, under the totality of the circumstances, there remains a material question of fact as to whether Workforce was a joint employer, and summary judgment on that basis is not warranted.[5]

**B.   Knowledge**

Workforce next argues that plaintiffs fail to demonstrate that it had actual or constructive knowledge of the unpaid overtime. "[I]f an employer has no actual or constructive knowledge of overtime work and the employee fails to notify the employer or deliberately prevents the employer from learning of the overtime work, no violation has occurred." Brennan v. Quest Comm'ns Int'l,

---

[5] Because the court concludes that summary judgment is not warranted, it need not consider whether Workforce was an "employer" rather than a "joint employer."

Inc., 727 F. Supp. 2d 751, 755 (D. Minn. 2010) (citation omitted).
A court "need only inquire whether the circumstances ... were such
that the employer either had knowledge [of overtime hours being
worked] or else had the opportunity through reasonable diligence to
acquire knowledge." Reich v. Dep't of Conservation & Natural Res.,
28 F.3d 1076, 1082 (11th Cir. 1994) (alterations in original)
(citations and internal quotation marks omitted), cited with
approval by Reich v. Stewart, 121 F.3d 400, 407 (8th Cir. 1997).

Plaintiffs respond that the time-clock system used to record
employees' hours was designed and administered, at least in part,
by Workforce. See, e.g., Lindsay Decl., ECF No. 45, at ¶ 16.
Further, plaintiffs argue that the system did not allow them to
input any "pay codes" other than "lunch" or "regular," such that
overtime hours could not be properly recorded. See Jones Aff., Ex.
25, ECF No. 161, at WL00012; but see id. Ex. 23, at PL32 (providing
for entry of overtime hours). Moreover, plaintiffs argue that
Workforce knew or should have known that the ability to input only
"lunch" or "regular" time meant that overtime hours were being
worked but not compensated because it knew that Clear Wireless had
classified employees as overtime-eligible. See Goodrich Decl. ¶ 5.

Workforce responds that plaintiffs "were independently
responsible for accurately recording their working time, including
overtime hours" in the time-clock system, and that the system
allowed such input. See Goodrich Decl. ¶¶ 8-10. Specifically,

Workforce argues that the "pay codes" were not as restrictive as plaintiffs argue and that employees in fact could enter overtime hours as "regular" hours worked. See Faigle Decl., ECF No. 176, at ¶ 4. Thus, the functionality of the time-clock system and whether Workforce - by virtue of the limitations of its system[6] and its knowledge of the overtime eligibility of its employees - had reason to know of unpaid overtime, remain as unresolved questions of material fact, particularly given the recent docket activity and ongoing discovery. See, e.g., Jones Aff., Ex. 4, ECF No. 239 (including individual with Workforce e-mail address in e-mail chain about employees' input of hours); id. Ex. 5. "[S]ummary judgment is not appropriate when there are unresolved fact issues regarding the employer's actual or constructive knowledge." Brennan, 727 F. Supp. 2d at 759 (citation omitted). As a result, summary judgment is not warranted at this stage in the proceedings.

---

[6] The court further notes the lack of clarity regarding which corporate entity operated the time-clock system. Compare Burns-Richie Decl., ECF No. 93, at ¶ 9 ("I record my work time using Workforce Logic's timekeeping system ...."), with Foster Decl., ECF No. 94, at ¶ 10 ("I record my work time using Clearwire's timekeeping system, on Zerochaos.com ...."), and Pfeil Decl., ECF No. 95, at ¶ 8 ("I record my work time using Workforce Logic's timekeeping system on the ZeroChaos website ...."). Such confusion is compounded by the lack of consistency in referring to the name of the time-keeping system used. Compare Faigle Decl., ECF No. 89, at ¶ 3 (referring to "ZC Web" system), with Goodrich Decl., ECF No. 92, at ¶¶ 8-9 (referring to "iClock" system).

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that defendant Workforce's motion for summary judgment [ECF No. 138] is denied.

Dated:  July 18, 2014

s/David S. Doty
David S. Doty, Judge
United States District Court