UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 13-834(DSD/FLN)

Kenneth Lindsay and Jesse
Owens individually and on
behalf of other similarly
situated individuals,

        Plaintiffs,

v.                              **ORDER**

Clear Wireless LLC and Workforce
Logic LLC, d/b/a Workforce Logic,
a Zero Chaos Company, APC Workforce
Solutions, LLC, d/b/a Zero Chaos,
Gary D. Nelson and Associates, Inc.,
ABE Services d/b/a Workforce Logic,
and Clearwire Corporation,

        Defendants.

This matter is before the court upon the motions for summary judgment and to decertify by defendants Clear Wireless LLC and Clearwire Corporation (collectively, Clear Wireless); Gary D. Nelson and Associates, Inc. and ABE Services, d/b/a Workforce Logic (collectively, GDNA); and Workforce Logic, LLC, d/b/a Workforce Logic, and APC Workforce Solutions, LLC, d/b/a ZeroChaos (collectively, ZC).  Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motions.

**BACKGROUND**

This conditionally certified class action arises out of the claim by named plaintiffs Kenneth Lindsay and Jesse Owens that defendants violated the overtime wage provisions of the Fair Labor Standards Act (FLSA) by requiring them to work off the clock without compensation.

**I.   The Parties**

The parties have provided voluminous detail regarding each defendant's formation and their relationship to one another.  The court will recite only those facts relevant to the instant motions.

**A.   Clear Wireless**

Clear Wireless provided wireless products and broadband services to consumers throughout the country.  Lamb Decl. ¶ 2. Clear Wireless sold its products and services through retail service representatives, who worked at mall kiosks, and national retail account executives, who worked in retail chain locations like Best Buy.  Id. ¶ 3.  In July 2013, Sprint Nextel Corporation acquired Clear Wireless.  Id. ¶ 7.  Clear Wireless stopped doing business on August 31, 2013.  Id. ¶ 9.

**B.   GDNA and ABE Services**

GDNA is a staffing company that formed ABE Services to provide temporary placement, onboarding, and payroll services to employers. Mohun Decl. ¶ 3.  In 2005, ABE Services merged with Workforce Logic

and thereafter did business as Workforce Logic.[1]  Id.  From April 2006 to January 4, 2012, ABE Services provided services to Clear Wireless pursuant to a professional services agreement (PSA).  The PSA provided that ABE Services would onboard individuals that Clear Wireless had recruited and interviewed.  See Cox Decl., Ex. A, ECF No. 68; Stephens Decl., ECF No. 140, ¶ 5.  "Onboarding" involved having those individuals complete initial hire paperwork pursuant to a temporary employment agreement.  See Stephens Decl., ECF No. 140, ¶ 5.

### C.   ZC and WorkForce Logic LLC

In 2011, ZC agreed to purchase certain of GDNA's assets, including ABE Services' Clear Wireless account and the underlying PSA.  Mohun Decl. ¶¶ 7-8.  GDNA transferred those assets to the newly formed Workforce Logic LLC.  Id. ¶ 8.  ZC purchased Workforce Logic LLC - and thus took over the Clear Wireless account and PSA - on January 5, 2012.  Thereafter, neither GDNA nor ABE Services had any involvement with the Clear Wireless account.

### D.   Named Plaintiffs

Plaintiff Kenneth Lindsay worked as a retail sales representative for Clear Wireless from November 2010 to August 2011.  Lindsay Dep. at 22:6-11.  Lindsay worked in several mall kiosks in the Minneapolis area.  Id. at 77:3-24.  He was typically scheduled

---

[1]  Workforce Logic was not a separate legal entity.  Mohun Decl. ¶ 3.  To avoid confusion with Workforce Logic LLC, the court will refer to ABE Services, d/b/a Workforce Logic as ABE Services.

to work 30-36 hours per week.  Id. at 216:25-220:3.

Plaintiff Jesse Owens sold Clear Wireless products and services in the Minneapolis area as a retail sales representative from March 2012 to June 2012.  Owens Dep. 20:23-21:6.  Owens worked at mall kiosks and at Best Buy.  Id. at 26:9-28:20.  During his short tenure with the company, Owens was typically scheduled to work between 30 and 35 hours per week.  Id. at 48:4-6.

## II.  This Action

On April 9, 2013, Lindsay and Owens filed suit individually and on behalf of similarly situated individuals, alleging that defendants failed to pay overtime compensation in violation of the FLSA.[2]  Plaintiffs specifically allege that they were required to perform off-the-clock overtime work.  Plaintiffs seek unpaid overtime, liquidated damages, and attorneys' fees and costs.  On January 3, 2014, the court conditionally certified the following nationwide class:

> Clear Wireless and Workforce Logic's employees and/or contractors that were employed in a sales related capacity to sell Clear Wireless' 4G broadband products in Clear Wireless' retail and national retail sub-distribution channels and markets as either Retail Sales Representatives and/or National Retail Account Executives from April 2010 to the present.

ECF No. 100, at 2.  During the opt-in period, 177 individuals joined

---

[2]  Plaintiffs initially sued Clear Wireless LLC and Workforce Logic, LLC, d/b/a Workforce Logic, a Zero Chaos Company, and later added APC Workforce Solutions, GDNA, ABE, and Clearwire Corporation as defendants.  ECF Nos. 1, 243, 287.

the class.  Thereafter, 50 individuals voluntarily dismissed their claims, leaving 127 opt-in plaintiffs and two named plaintiffs. Plaintiffs are located throughout the United States.  See Meitzen Report, Exs. 2, 5.

Plaintiffs allege a broad range of claims regarding off-the-clock work.  First, plaintiffs identify various tasks performed off the clock:  hanging flyers on doors, Lindsay Dep. at 78:14-24; selling products and services outside of store hours and locations, id., Hopkins Dep. at 98:3-99:8, Zorn Dep. at 55:16-18, id. at 66:19-21, Owens Dep. at 78:11-79:3; passing out flyers, Gonzalez Dep. at 22:21-23:1; attending weekly meetings, Egginger Dep. at 25:22-24, 37:8-14; attending monthly meetings, Crook Dep. at 25:10-27:2; booting up store computers, Lindsay Dep. at 160:15-163:10; selling to friends and family, Owens Dep. at 140:3-5; working during meal breaks, Lindsay Dep. at 219:6-12; and, in one instance, drawing the Clear Wireless logo on sidewalks, Egginger Dep. at 36:1-25.  Not every plaintiff engaged in the same tasks, however.  See Owens Dep. at 138:11-20, Egginger Dep. at 83:20-23, Gonzalez Dep. at 72:2-9 (no door hanging, distributing flyers, or selling to friends and family); Johnson Dep. at 49:5-16, Egginger Dep. at 83:13-17, Lewis Dep. at 63:20-24, (no selling outside of store hours and locations); Gonzalez Dep. at 27:3-5 (no weekly or monthly meetings); Pujol Dep. at 108:5-8, Gonzalez Dep. at 68:6-14 (no booting up computers); Lewis Dep. at 77:20-22 (no selling to family and friends); and

Egginger Dep. at 53:9-10 (no working during meal breaks).

Second, plaintiffs identify various reasons for not reporting alleged off-the-clock overtime work.  Certain plaintiffs claim that their Clear Wireless supervisors instructed them not to submit overtime or off-the-clock work, while others claim that their supervisors unilaterally reduced their submitted hours or rejected overtime hours.  See, e.g., Owens Dep. at 59:12-60:24 (instructing employee not to submit overtime hours); Lewis Dep. at 31:13-32:25 (same); Griffin Dep. at 130:14-131:25 (editing employee's submitted overtime hours); Crook Dep. at 73:25-74:21 (rejecting employee's self-reported overtime hours); Hopkins Dep. at 60:19-25 (same).  No plaintiff points to a uniform policy prohibiting overtime compensation or requiring off-the-clock work, however.

Third, plaintiffs identify different ways of reporting hours and submitting time sheets, depending on their location and supervisor.  Some plaintiffs recorded their own time in an on-line time keeping system, some reported all time worked to their supervisors, and others recorded standard hours in the on-line time keeping system and reported overtime hours to their supervisors. See,e.g., Williams Dep. at 62:1-7 (submitted own time); Gonzalez Dep. at 18:1-22, 48:23-25 (reported time to supervisor); Vardapetyan Dep. at 85:9-24 (recorded non-overtime hours and reported overtime hours to supervisor).

6

Finally, plaintiffs identify a broad range of hours they claim to have worked without compensation.  For example, Lindsay and Owen estimate that they worked "approximately 10 hours of overtime per workweek" for differing numbers of weeks, while certain opt-in plaintiffs testified that they worked between three and fifteen overtime hours per week.[3]  See Middleton Decl., ECF No. 415, Ex. 6, at 4 (Lindsay); id. Ex. 11, at 6 (Owens); Pereda Dep. at 65:9-66:7 (three hours per week); Vardapetyan Dep. at 152:16-153:18 (fifteen hours per week).

Defendants now move to decertify the class and for summary judgment.[4]

## DISCUSSION

### I.  Motion to Decertify

Defendants first move to decertify the class.  It is not uncommon for courts in FLSA cases to certify a conditional class only to decertify that class during the second phase.  The decision to decertify a class under 29 U.S.C. § 216(b) is within the court's discretion.  Nerland v. Caribou Coffee Co., 564 F. Supp. 2d 1010, 1018 (D. Minn. 2007).

---

[3] As discussed below, named plaintiffs' estimates of overtime varied wildly throughout this litigation.  They most recently estimate that they worked approximately ten hours of overtime per week.

[4] The court denied defendants' earlier motion for summary judgment as premature.  ECF No. 282.

The FLSA contemplates collective actions where the members of the proposed class are "similarly situated."  29 U.S.C. § 216(b). The determination of whether class members are "similarly situated" under the FLSA requires the consideration of three factors: (1) the extent and consequences of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.  Burch v. Qwest Commc'ns, Int'l, 677 F. Supp. 2d 1101, 1114 (D. Minn. 2009).  "Another question the court considers is if plaintiffs can demonstrate that the Defendant[ ] had a common policy or plan in violation of the FLSA that negatively impacted the original and opt-in Plaintiffs." Id. (citations and internal quotation marks omitted).  Plaintiffs bear the burden of establishing that they are similarly, but not identically, situated.  Smith v. Heartland Auto. Servs., Inc., 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005).  "If the claimants are not similarly situated, the district court decertifies the class and the opt-in plaintiffs are dismissed without prejudice." Nerland, 564 F. Supp. 2d at 1017-18.  The named plaintiffs would then proceed to trial if the case is not dismissed on the merits.  Id.

## A.   Uniform Policy or Practice

Defendants first argue that decertification is appropriate because plaintiffs cannot point to a uniform policy or practice, written or otherwise, encouraging or requiring off-the-clock

overtime work.  As Clear Wireless notes, its policy expressly prohibits off-the-clock work and makes clear that all work performed will be compensated, including pre-approved overtime. Goodrich Decl. ¶ 6; id. Ex. BB at 12-15.

At the conditional certification stage, plaintiffs asserted that defendants' illegal policy was evident in three different ways: (1) there was an express written policy requiring sales representatives to work off the clock without compensation, (2) a uniform online timekeeping system prevented sales representatives from entering pre- or post-shift work, and (3) the timekeeping system required sales representatives to indicate that they took a lunch break, even when they did not.  ECF. No. 78, at 1.  Plaintiffs appear to have abandoned those assertions, and for good reason, as they are not supported by the ample record.

Plaintiffs now contend that Clear Wireless' policy requiring off-the-clock work and unpaid overtime is a "no-policy, policy" that flows from Clear Wireless' labor-efficiency goals.[5]  Specifically, plaintiffs assert that Clear Wireless allocated a set number of labor hours for each sales region that effectively precluded

---

[5]   Plaintiffs struggle to include the staffing company defendants in this discussion, because the record does not support a finding that those defendants set any substantive policy or practice with respect to overtime or off-the-clock work. Plaintiffs argue that the staffing companies are nevertheless liable because they applied Clear Wireless' policies.  This argument is unavailing.  The court will focus its analysis on Clear Wireless.

overtime and required sales representatives to engage in uncompensated off-the-clock work.  Plaintiffs admit, however, that a policy designed to maximize employee performance within budgeted labor hours does not violate the FLSA.  And although it would violate the FLSA to require overtime without compensation, the so-called "labor efficiency policy"[6] does not dictate uncompensated overtime.  Rather, as Clear Wireless representatives testified, overtime work required prior approval, but was not prohibited.  See Abler Dep. at 297:9-298:8; Reid Decl. ¶ 9.  The record also supports a finding that sales representatives were paid for overtime work even without such prior approval.  See Abler Dep. at 298:17-299:25; Reid Decl. ¶ 9; Haskell Dep. at 404:25-406:1; see also Meitzen Report Exs. 1-6 (showing that many plaintiffs regularly submitted overtime and received overtime compensation).  Although there is testimony to the contrary, plaintiffs are unable to point to consistent testimony, even among plaintiffs, establishing a uniform policy requiring overtime work without compensation.  This lack of uniformity seriously undermines the court's ability maintain a manageable class action.  See Burch, 677 F. Supp. 2d at 1118 (finding no uniform policy given "widely varying" testimony regarding the kinds of activities performed and how frequently they were performed).

---

[6]  Plaintiffs - not Clear Wireless - coined the term "labor efficiency policy."

Further, Dr. Mark E. Meitzen, defendants' statistical expert, analyzed plaintiffs' weekly payroll records during the class period and concluded that he could discern no "widespread policy, plan, or practice" requiring unpaid overtime work.  Meitzen Report ¶¶ 3-6. Nor could Dr. Meitzen discern any "widespread or pervasive changes" to plaintiffs' timesheets, as plaintiffs allege.  Id.  Plaintiffs did not depose Dr. Meitzen, have not challenged his opinion, and do not offer a competing expert opinion.[7]  As such, his unrebutted opinion serves as credible evidence in defendants' favor.

Plaintiffs also generally complain that they were subjected to an oppressive sales culture similar to that depicted in the movie Glengarry Glen Ross.  Even if the record supported such a characterization, it is not unlawful to maintain a high-pressure sales environment or even to discourage overtime.  See Falcon v. Starbucks Corp., 580 F. Supp. 2d 528, 536 (S.D. Tex. 2008) (noting that "it is not unlawful for an employer to have a policy of discouraging overtime").  Nor does plaintiffs' assertion, by itself,

---

[7] Plaintiffs' counsel has explained that he did not challenge Dr. Meitzen's opinion because plaintiffs complain of off-the-clock work that is not reflected in the payroll records.  This argument misses the mark.  Through his detailed statistical analysis of payroll records, Dr. Meitzen was able to determine that there was no evidence to support plaintiffs' claim that defendants established a "widespread, repeated, and consistent illegal wage and hour policy of failing to pay Plaintiffs for all hours work[ed], for time worked off-the-clock, and for overtime." Meitzen Report at 8 (quoting Second Am. Compl. at 14.)  He did not conclude, nor was he apparently asked to conclude, that plaintiffs never did off-the-clock work or that they were sometimes not paid for that work.

establish a consistent pattern of FLSA violations.  See id. ("Where such a policy, however, in combination with other factors, leads to a consistent pattern of FLSA violations, it can support a finding that Plaintiffs are similarly situated for purposes of section 216.").

Under these circumstances, the court cannot conclude that plaintiffs have established a uniform policy or practice requiring off-the-clock work, and finds that decertification is appropriate on this basis alone.  See Burch, 677 F. Supp. 2d at 1114 ("When there is no uniform policy requiring off-the-clock work, this fact weighs heavily in favor of decertification.").

**B.   Disparate Factual and Employment Settings/Individualized Defenses**

Defendants also argue that plaintiffs' off-the-clock experiences are too varied to allow the class to proceed. Plaintiffs respond that class treatment is nevertheless appropriate because they all performed the same basic duties, sold the same products, were subject to the same employment terms and conditions, and had the same dress code.  But these generalized similarities, most of which are irrelevant for present purposes, are dwarfed by plaintiffs' different experiences with respect to the off-the-clock work and overtime alleged.  As noted above, there is no consistency among plaintiffs regarding the kinds of off-the-clock work performed, the circumstances requiring the work, the amount of such work performed, or whether plaintiffs were compensated for that

work.  This is not a case where plaintiffs were required to do the same work without pay, like donning and doffing protective gear, booting up the computer before punching in, or working through lunch without pay.  See id. at 1122 (finding that collective action was appropriate as to claims that there was a common policy requiring booting up computers pre-shift and shutting down computers post-shift because the practice was widespread, the amount of time spent on such tasks was similar for each plaintiff, and representative testimony would be sufficient to establish liability); Thompson v. Speedway SuperAmerica LLC, No. 08-1107, 2009 WL 130069, at *12 (D. Minn. Jan. 20, 2009) (distinguishing matter involving varied off-the-clock work from "the sorts of cases, which have been found to be best managed as a collective action - namely, cases in which the employees allege that they are not paid for mandatory, identical, preparatory tasks, such as donning and doffing protective equipment, booting up their computers, or loading their trucks, at the beginning of a work shift").

     If the court were to maintain the class, it would have to undertake individual inquiries due to plaintiffs' differing experiences.  Specifically, the court - or the jury - would have to determine whether and under what circumstances each plaintiff performed uncompensated overtime work, the kind of work performed, and whether defendants, rather than individual supervisors, knew or should have known of that unpaid work.  Holding mini-trials for each

plaintiff to determine liability on these bases would be cumbersome and unmanageable.  Further, given the differences among plaintiffs' experiences, the court fails to see how the case could be tried with a smaller, representative number of plaintiffs.  As a result, the disparate factual circumstances among plaintiffs render class treatment untenable.

For the same reasons, the court also finds that individualized defenses would make collective action unmanageable.  Defendants have the right to challenge each plaintiff's credibility in light of their varied experiences and can do so only by cross-examining him or her.  The necessity of such individual inquiries further undermines the suitability of this case as a class action.  Accordingly, the court concludes that plaintiffs are not similarly situated for purposes of the FLSA.

### C.    Fairness and Procedural Considerations

Given that the facts presented overwhelmingly support a finding that plaintiffs are not similarly situated, the court cannot conclude that fairness or procedural considerations weigh in favor of maintaining the class.  The court is mindful that proceeding individually may be difficult for some plaintiffs, but is convinced that class treatment is inappropriate and would cause greater unfairness.  As a result, the court will decertify the class.

## II.  Motion for Summary Judgment

The court now turns to defendants' motions for summary judgment.  Because the case will not proceed as a class action, the court will consider whether the named plaintiffs may move on to trial.

### A.    Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324.  A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  If a plaintiff cannot support each essential element

15

of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Celotex, 477 U.S. at 322-23.

## B.  Fair Labor Standards Act

Defendants argue that summary judgment is appropriate because neither Lindsay nor Owens has proffered sufficient evidence to establish that they worked overtime without compensation.[8]  The court agrees.

The FLSA prohibits the employment of any person "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  An employee who sues for unpaid overtime "has the burden of proving that he performed work for which he was not properly compensated."  Holaway v. Stratasys, Inc., 771 F.3d 1057, 1059 (8th Cir. 2014) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946), superseded by statute on other grounds). If an employer has failed to keep records, as required by 29 U.S.C. § 211(c), "employees are not denied recovery under the FLSA simply because they cannot prove the precise extent of their uncompensated work."  Id.  Rather,

---

[8]  The staffing company defendants also seek summary judgment on the ground that they were not plaintiffs' employers under FLSA. The court need not address this issue, because plaintiffs have not established a violation of the FLSA.

"employees are to be awarded compensation based on the most accurate basis possible." _Id._ (citation and internal quotations omitted). "Under this relaxed standard of proof, once the employee has shown work performed for which the employee was not compensated, and sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference, the burden then shifts to the employer to produce evidence to dispute the reasonableness of the inference." _Id._ (citations and internal quotations omitted).

### 1.   Lindsay's Alleged Overtime

Lindsay was employed as a sales representative for Clear Wireless for 35 weeks - from November 2010 until August 1, 2011. He typically worked six-hour shifts five or six days per week. Lindsay's testimony about under what circumstances and how often he worked overtime has been wildly inconsistent throughout this case. When initially asked how much overtime he worked each week, Lindsay responded that he did "not know off the top of his head." _See_ Middleton Decl., ECF No. 415, Ex. 4, at 5. Lindsay also acknowledged that he did not keep records regarding his overtime. _See id._ at 6. Ignoring the fact that he claims to have worked off the clock, Lindsay suggested that Clear Wireless records would enable him to determine his overtime hours. _Id._

During his deposition, Lindsay testified about the kinds of off-the-clock tasks he claims to have performed, but could not estimate how many overtime hours he spent doing those tasks or how

17

frequently he performed them.  <u>See, e.g.</u>, Lindsay Dep. at 160:5-168:3, 237:19-240:3; 241:4-253:4.  He testified that any estimate would be pure "speculation."  <u>See, e.g.</u>, <u>id.</u> at 80:22-81:14, 95:6-20, 100:13-23, 101:4-10, 105:10-17, 144:12-22, 167:7-15, 238:11-240:12, 241:24-242:7, 252:24-253:4, 267:23-268:1, 270:25-271:12.

Soon after his deposition, Lindsay supplemented his interrogatory responses, stating that he "does not possess nor have specific knowledge" regarding the number of overtime hours he worked in any given week.  <u>See</u> Middleton Decl. Ex. 5, at 3.  Then on June 6, 2015, nearly two years later, Lindsay again supplemented his interrogatory responses.  This time, Lindsay identified three weeks in which he claims to have worked "approximately a 50 hours (plus) week."  <u>Id.</u> Ex. 6, at 4.  He did not provide estimated overtime hours for any other specific weeks, but broadly stated that his "general estimate" is that he worked "approximately" 10 hours of overtime for each of the 35 weeks of work, "conservatively totaling 350 hours of unpaid overtime."[9]  <u>Id.</u>  Lindsay said he based his

---

[9]   It is unclear why Lindsay bothered to isolate three specific weeks of "50 hours (plus)," when he claims to have worked 10 hours of overtime for each week he was employed.  <u>See id.</u> Lindsay did not provide any details about the overtime work performed in any of the three "example" weeks.  <u>See id.</u>  Nor does he explain how he claims to have worked 50 hours per week, based on 10 hours of overtime, when he was scheduled to work between 30 and 35 hours per week.  If he was scheduled to work 30 hours in a given week and worked an additional 10 hours, he would have worked 40, rather than 50, hours in that week.  Employers are only required to pay overtime wages if an employee works more than 40 hours per week.  <u>See</u> 29 U.S.C. § 207(a)(1).

estimate on his "memory," "work experience," and unspecified "business documents."  Id.  Although Lindsay denies ever being paid for overtime work, the record shows that he was paid $578.67 for 22.25 hours of overtime.  Goodrich Decl. ¶ 5; id. Ex. A.

On August 21, 2015, just days before the close of discovery, Lindsay served defendants with his third supplemental answers to interrogatories in which he provided a daily breakdown of his overtime for the three "example" weeks he first mentioned in his second supplemental answer to interrogatories.[10]  Middleton Decl., ECF No. 415, Ex. 7.  For example, on Monday of the example week beginning on April 9, 2011, Lindsay stated that he was scheduled to work 7 hours and that he worked an additional hour off the clock. Id. at 3.  However, Lindsay did not specifically explain what he did during the alleged hour of overtime.  He instead provided a general narrative called "Unpaid, 'off-the-clock' workweek Activities for the above workweek," which was identical for each example week.  Id. at 4, 6, 8.  Lindsay did not alter his previous estimate of 350 total hours of unpaid overtime.  Id. at 8.  He based his slightly more detailed estimate, again, on his memory, work experience, and unspecified documents.  Id.  He did not explain how, contrary to common experience, his memory improved over the course of

---

[10]  This new level of specificity was undoubtedly designed to meet the requirement, reiterated recently in Holaway, that overtime work be supported with "specific day and hours worked."  Holaway, 771 F.3d at 1060.

litigation.

Lindsay's contradictory, vague, and admittedly speculative testimony, lacks credibility.  Indeed, the court is particularly unpersuaded by Lindsay's claim to have worked 10 hours of overtime for each week he worked, given his previous inability to provide any estimate of his overtime hours.  He provides no explanation as to why, four years later, he now remembers how many hours he worked on a given day.  Even assuming his third supplemental interrogatory responses were timely,[11] the court will not accept such unreliable testimony.  See RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 402 (8th Cir. 1995) (recognizing that self-serving testimony that contradicts previous testimony does not create a genuine issue of material fact); see also Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.").

---

[11]   Under very similar circumstances, also involving counsel for plaintiffs, the court granted defendant's motion to strike plaintiff's third supplemental answers to discovery as untimely. Longlois v. Stratasys, Inc., 88 F. Supp. 3d 1058, 1078-79 (D. Minn. 2015).  The court reasoned, in part, that although plaintiff served his supplemental answers before the discovery deadline, "his belated supplementation did not leave [defendant] with sufficient time to depose him on its contents before the deadline for doing so expired...."  Id. at 1077.  The court could follow suit in this case, but declines to do so.

Even if somehow credible, Lindsay's estimate is devoid of any specificity.  He fails to explains exactly what he did during the alleged overtime hours, even in the "example" weeks he recently provided.  His unsubstantiated testimony does not constitute "sufficient evidence to show the amount and extent of [overtime] work which would allow a fact-finder to find overtime hours as a matter of just and reasonable inference." Holaway, 771 F.3d at 1060 (emphasis in original) (citation and internal quotations omitted); see also Mellon v. Hospice Preferred Choice, Inc., No. 09-932, 2011 WL 70612, at *3 (D. Minn. Jan. 10, 2011) (applying federal standard to Minnesota FLSA claim and concluding that plaintiff's lack of recollection or documentation of unpaid overtime insufficient "evidence from which the court can draw a just and reasonable inference").  As a result, defendants are entitled to summary judgment on Lindsay's claim.

### 2. Owens' Alleged Overtime

Owens' evidence of overtime closely matches Lindsay's.  Early in the case, Owens responded to written discovery by stating that he "does not know" how many hours of overtime he worked and that he did not have documents reflecting such information.  Middleton Decl., ECF No. 415, Ex. 9, at 3-4.  Owens further stated that the amount and extent of his overtime hours "varied greatly from week to week and from month to month."  Id. at 4.

Soon thereafter, Owens testified in his deposition about the kinds of off-the-clock tasks he claims to have performed.  Like Lindsay, however, he could not identify which days he worked overtime or how many hours of overtime he worked in any given day, but he estimated that he worked at least 55 hours every week.  Id. at 262:21-25, 268:15-21, 269:9-25, 271:1-16.  Owens even testified that he worked "55-plus" hours the week of March 25, 2012, even though he was only scheduled to work 6.75 hours that week.  Id. at 275:10-22.

Owens supplemented his discovery responses shortly after his deposition.  He stated that, as to overtime, he "does not possess nor have specific knowledge 'for each week' [he] worked."  Middleton Decl. Ex. 10, at 3.  Then, nearly two years later, Owens again supplemented his interrogatory responses.  This time, Owens - just like Lindsay - identified three weeks in which he claims to have worked "approximately a 50 hours (plus) week."  Id. Ex. 11, at 6. He did not provide any detail as to the kind of overtime work he performed in those weeks.  Nor did he provide estimated overtime hours for any other specific weeks during his tenure, and instead broadly stated that his "weekly unpaid overtime hours averaged 'approximately' 10 hours for each of the 7 weeks he worked, "conservatively totaling 70 hours of unpaid overtime."  Id.  Just like Lindsay, Owens based his estimate on his "memory," "work experience," and unspecified "business related documents."  Id.

Just days before the close of discovery, Owens served defendants with his third supplemental answers to interrogatories, in which he provided a daily breakdown of his overtime for the three "example" weeks. Id. Ex. 12, at 2-8. For example, Owens specified that he worked eleven hours of unpaid overtime during one of the "example" weeks. Id. at 3-4. Owens still was not able to identify, however, the activities he performed during that alleged overtime. Id. at 4. He instead referred to a lengthy and identical list of tasks for each example week. Id. at 4, 6, 8. He explained that his new "estimation" was based on his "memory," "work experience while employed," and a review of unspecified "business related documents." Id. He also acknowledged, however, that "none of the[] documents contained any information showing [his] unpaid, off-the-clock work." Id. at 8.

Because Owens' proof of overtime is as inconsistent, vague, and incredible as Lindsay's, his claim fails for the reasons stated above. As a result, defendants are also entitled to summary judgment on Owens' claim.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.    The motions to decertify the class [ECF Nos. 410, 419, and 427] are granted;

2.    The opt-in plaintiffs are dismissed without prejudice; and

3.    The motions for summary judgment [ECF Nos. 413, 416, and 422] are granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  March 10, 2016

s/David S. Doty
David S. Doty, Judge
United States District Court